NUMBERS
13-04-459-CR, 

                         13-04-460-CR &
13-04-461-CR

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS
 CHRISTI - EDINBURG

 

 

ROSIE
WILLIAMS,                                                    Appellant,

 

                                           v.

 

THE
STATE OF TEXAS,                                              Appellee.

 

 

 

                  On appeal from the 377th
District Court

                           of Victoria County, Texas.

 

 

 

                     MEMORANDUM OPINION[1]

 

                Before Justices Yañez,
Castillo, and Garza

                  Memorandum Opinion by Justice Castillo

 








Rosie Lee Williams
appeals from three convictions:  (1)
possession with intent to deliver cocaine;[2]
(2) possession of a prohibited substance in a correctional facility;[3]  and (3) tampering with physical evidence.[4]  By one issue, Williams asserts that the
sentences imposed constitute cruel and unusual punishment.  We affirm.

I.  Background

The trial court
admonished Williams regarding the range of punishment for each offense at a
pretrial hearing and again at the plea hearing. 
As to each offense, Williams stated she understood the punishment
range.  Williams pleaded no contest to
the three charges without a plea agreement. 
The case was tried to the court on both guilt and punishment.[5]  








Police officer Jeffrey
Lehnert, with the special crimes and narcotics unit of the Victoria police
department, testified that Williams was "dealing narcotics."  On January 9, 2004, officer Lehnert and
another officer arrived at Williams's residence to execute an arrest
warrant.  Officer Lehnert observed
Williams place a plastic bag containing a "substantial amount" of a
white powdery substance in her mouth, which action, by his training, led him to
believe the substance was cocaine. 
Concerned she would die, the officers apprehended her and she expelled
the substance from her mouth.[6]

Laboratory testing
concluded that the substance was 5.08 grams of cocaine, an amount not
considered normal for personal use.[7]  Incident to Williams's arrest, officer
Lehnert found her wallet, containing $660. 
Williams explained that she had earned the money by babysitting and
hairstyling.  She further explained that
the money was to pay her rent.  Officer
Lehnert contacted the apartment manager and determined that Williams had
already paid her rent for the month of January. 


Detective Paul Mauro
testified that on December 19, 2003, he participated in a controlled cocaine
purchase from Ervin Hargrove, who was accompanied by Williams.  Mauro testified he had made several similar
purchases from Hargrove.  Detective Mauro
determined, through a confidential informant, that the cocaine belonged to
Williams and Hargrove was the "middle man."  








Williams testified on
her own behalf.  She admitted that on the
night she was arrested she had hidden drugs in her body and, thus, took them
into the county jail facility.  She
admitted she sold drugs to earn money. 
She explained that her parental rights to three of her five children
were terminated because of a controlled substance offense and she needed money
to maintain an apartment.  She testified
she successfully completed deferred adjudication community supervision for the
prior controlled substance offense.[8]  Williams admitted she had consumed controlled
substances in the past.  On
cross-examination, she admitted she sold controlled substances, but denied the
cocaine involved in detective Mauro's controlled purchase was hers.  She testified she had accompanied Hargrove at
the time, but was unaware he would be selling cocaine.  She admitted that her daughter was in the
apartment when Williams was arrested but her daughter did not "mess with
drugs."  She admitted she tried to
swallow the cocaine at the time of her arrest because she was "afraid to
go to jail."  Regarding the cocaine
she transported into the jail, Williams denied she intended to use or sell it
while in jail.  She denied that the money
seized from her apartment was proceeds from controlled substance sales. 








The trial court found
that Williams was mentally competent[9]
and that her plea was freely and voluntarily made.  The trial court accepted Williams's no
contest plea and found her guilty of the three offenses.  Before imposing punishment, the trial court
asked Williams if there was any legal reason why sentence should not be
imposed.  Defense counsel responded there
was not.  The trial court assessed
punishment at (1) six years in the Texas Department of Criminal JusticeBInstitutional Division
and a $1,000 fine for the prohibited substance in a correctional facility and
tampering offenses, and (2) eighteen years' imprisonment and a $1,000 fine for
unlawful delivery of a controlled substance.[10]  The trial court exercised its discretion and
ordered the sentences to run concurrently. 

II.  Cruel and Unusual Punishment

Williams argues that
the trial court abused its discretion in assessing a sentence of imprisonment,
arguing that such sentence violated her right to be free from cruel and unusual
punishment, as provided by the Eighth Amendment of the United States
Constitution and Article I, Section 13 of the Texas Constitution because she is
mentally challenged, to the degree that she cannot appreciate or understand the
penalty.[11]  Williams concedes she did not preserve error
because she did not object on these grounds at the time of sentencing.  She asserts, however, that fundamental error
need not be preserved for review.








We note first of all
that Williams has cited no authority in support of her state constitutional
claims, or explained how that protection differs from that provided by the
federal constitution.  Williams has
therefore forfeited her state constitutional claim.  See Narvaiz v. State, 840 S.W.2d 415,
432 (Tex. Crim. App. 1992).  In any case,
Texas courts make no distinction between Texas and federal constitutional
provisions of cruel and unusual punishment, and so our decision under either
would be the same.  Cantu v. State,
939 S.W.2d 627, 639 (Tex. Crim. App. 1996).








Williams made no
objection to her sentence to the trial court, either at the time of sentencing
or in any post-trial motion, on any grounds; nor did she ever lodge an
objection, under constitutional or other grounds, to the alleged cruel and
unusual nature of the sentences. 
Generally, an appellant may not complain of an error pertaining to his
or her sentence or punishment if she has failed to object or otherwise raise
error in the trial court.  Mercado
v. State, 718 S.W.2d 291, 296 (Tex. Crim. App. 1986); Quintana v.
State, 777 S.W.2d 474, 479 (Tex. App.BCorpus Christi 1989,
pet. ref=d) (failing to object
to sentence as cruel and unusual forfeits error).  An accused may waive even constitutional
rights.  Saldano v. State,
70 S.W.3d 873, 887 (Tex. Crim. App. 2002); Jenkins v. State, 912
S.W.2d 793, 815 (Tex. Crim. App. 1995) (op. on reh'g); Smith v. State,
721 S.W.2d 844, 855 (Tex. Crim. App. 1986). 
To preserve an error for appellate review, a party must present a timely
objection to the trial court, state the specific grounds for the objection, and
obtain a ruling.  Tex. R. App. P. 33.1(a); see Blue v.
State, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000).  "All a party has to do to avoid the
forfeiture of a complaint on appeal is to let the trial judge know what he
wants, why he thinks himself entitled to it, and to do so clearly enough for
the judge to understand him at a time when the trial court is in a proper
position to do something about it." 
Keeter v. State, 2005
Tex. Crim. App. LEXIS 521, at *9 (Tex. Crim. App. April 6, 2005) (citing Lankston
v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (en banc)).  

Because the sentences
are within the punishment range and are not illegal, we conclude that the
rights Williams asserts for the first time on appeal are not so fundamental as
to have relieved her of the necessity of a timely, specific trial objection.  See Nunez v. State, 117 S.W.3d
309, 320 (Tex. App.BCorpus Christi 2003,
no pet.)[12]
(citing Blue, 41 S.W.3d at 131). 
Thus, by failing to object to the trial court's sentence below, Williams
has forfeited her sole issue on appeal. 

III.  Conclusion

Accordingly, we
conclude that Williams forfeited at trial her cruel and unusual punishment
claim.  See Nunez, 117 S.W.3d
at 320; see also Quintana v. State, 777 S.W.2d at 479.  We overrule Williams's sole issue. We affirm
the judgment and sentence of the trial court. 


ERRLINDA CASTILLO

Justice

Do not publish.

Tex. R. App. P. 47.2(b).

 

Memorandum Opinion delivered and filed

this 28th day of July, 2005.  








 

 

 

 

 











[1] 
See Tex. R. App. P. 47.2, 47.4





[2] See Tex. Health & Safety Code Ann. _481.112(a), (d) (Vernon 2003).  In trial court cause No. 04-3-20,778-D,
appeal No. 13-04-459-CR, the indictment alleged that, on or about January 9, 2004,
Williams possessed, with intent to deliver, four grams or more but less than
two hundred grams of cocaine, a first degree felony.  A first degree felony offense is punishable
by imprisonment in the institutional division for life or for any term of not
more than ninety-nine years or less than five years and a fine not to exceed
$10,000.  Tex. Pen. Code Ann. _12.32(a),(b) (Vernon 2003).  





[3] See Tex. Pen. Code Ann. '38.11 (Vernon Supp. 2004-05).  In trial court cause No. 04-3-20,788-D,
appeal No. 13-04-460-CR, the indictment alleged that, on or about January 11,
2004, Williams possessed cocaine while in the Victoria County Jail, a penalty
group 1 offense and, thus, a third degree felony.  A third degree felony offense is punishable
by imprisonment in the institutional division for any term of not more than ten
years or less than two years and a fine not to exceed $10,000.  Tex.
Pen. Code Ann. _12.34(a),(b) (Vernon 2003).  





[4] See Tex. Pen. Code Ann. '37.09(d)(1) (Vernon 2003). 
In trial court cause No. 04-3-20,789-D, appeal No. 13-04-461-CR, the
indictment alleged that, on or about January 9, 2004, Williams altered or
concealed a bag of cocaine with intent to impair its availability as evidence,
a third-degree felony. 





[5] The trial court admonished
Williams of her right to remain silent and later stated: "So, we're also
dealing with the punishment phase testimony, as well as guilt phase
testimony."  





[6] The trial court admitted in
evidence the State's photograph of the expelled substance.





[7] Officer Lehnert testified that,
after securing a search warrant, officers found no paraphernalia in the house
that would lead him to believe Williams was a user of cocaine.  He added that the amount seized was enough to
make crack cocaine.  A further search of
the premises yielded a shoe box containing additional cash.





[8] The trial court pointed to court
documents showing she had been unsuccessfully discharged from a restitution
center, and she had numerous arrests for violating the terms and conditions of probation
for, among other things, positive drug screens. 






[9] The trial court pronounced that he
reviewed Williams's exhibit, a psychological report, admitted in evidence and
"considered that in mitigation of what should be done in this
case."  Dated January 7, 2003, the
report shows Williams was evaluated for purposes of proceedings involving her
children while in foster care.  The
report shows an "overall general intellectual functioning in the Mild
Retardation range (55-69)."  





[10] Court documents executed by
Williams show her plea of no contest to the offense of delivery of a controlled
substance (cocaine).  





[11] Williams does not argue that any
of the sentences are outside the maximum range of punishment, which would be
unauthorized by law and therefore illegal. 
Mizell v. State, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003). 

 





[12] Overruled in part on other
grounds, Resendez v. State, 160 S.W.3d 181, 186 (Tex. App.BCorpus Christi 2005, no pet.).